NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 26 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FANN CONTRACTING, INC., | No. 20-16497 |
| Appellant, | D.C. No. 2:19-cv-00716-GMN |
| v. | |
| GARMAN TURNER GORDON LLP; BRIAN D. SHAPIRO, Chapter 11 Trustee, | MEMORANDUM[*] |
| Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Submitted October 22, 2021[**]
San Francisco, California

Before: WATFORD and HURWITZ, Circuit Judges, and BAKER,[***] International Trade Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

Fann Contracting, Inc., contests the 35% contingency fee awarded to Garman Turner Gordon LLP (GTG) after finalization of a $1.75 million settlement in bankruptcy court. The district court affirmed the bankruptcy court's fee award, and Fann now appeals from that decision. We have jurisdiction under 28 U.S.C. §§ 158(d)(1) and 1291, and we affirm.

**1.** The bankruptcy court did not abuse its discretion in calculating the contingency fee based on the full $1.75 million settlement payment. The fee agreement between GTG and the Trustee states that the contingency fee will be calculated based on all sums "recovered, held or distributed" by the estate, and here the terms of the settlement resulted in a $1.75 million payment to the estate. It is true, as Fann notes, that $900,000 of the estate's recovery was immediately paid to the Canyon Rock Parties as an allowed secured claim. But that payment was one component of a global settlement that resolved the Canyon Rock Parties' disputed secured claim of $4.5 million against the estate. The settlement also extinguished several ongoing litigation claims against the estate. Given these facts, the bankruptcy court permissibly viewed the full $1.75 million settlement payment as the amount "recovered" and "distributed by" the estate for purposes of calculating the contingency fee. *See In re Rifino*, 245 F.3d 1083, 1088 (9th Cir. 2001) ("Where there are two permissible views of the evidence, the factfinder's

choice between them cannot be clearly erroneous.") (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

**2.** The bankruptcy court did not award GTG fees under the lodestar method, but instead based the fee award on the agreed-upon contingency rate of 35%. The court merely used a lodestar calculation as one of several factors in determining whether the 35% contingency fee requested by GTG was reasonable under 11 U.S.C. § 330(a). In making that determination, the court properly gave significant weight to other factors, such as the difficulty of the case, the surprisingly favorable results obtained, the substantial risk GTG shouldered that no recovery would be obtained at all, and the quality of GTG's representation throughout the litigation. Any error by the bankruptcy court in calculating the lodestar amount did not taint its overall reasonableness determination.

**3.** The bankruptcy court was not required to reduce the fee award simply because no funds remained to pay unsecured creditors under the settlement agreement. The text of the relevant statute requires a holistic, multi-factor analysis that focuses on benefits to the estate, not to any one class of creditors. *See* 11 U.S.C. § 330(a). The bankruptcy court did not clearly err in finding that the settlement generated substantial benefits for the estate, given that the estate had few if any liquid assets prior to the litigation initiated by GTG. The court also found that, even as to the unsecured creditors, GTG's work proved modestly

beneficial. The court credited GTG for reaching a comprehensive settlement that reduced the unsecured creditor pool by $13 million, which indirectly facilitated a $200,000 distribution to the unsecured creditors, including Fann.

**AFFIRMED.**